## Mary Steurer, by her Next Friend, v. Charlie Ried.

1.   VERDICTS—*When Not to be Set Aside.*—A verdict will not be set aside when there is a conflict of evidence, and the facts and circumstances, by a fair and reasonable intendment, will authorize it.

2.   EVIDENCE—*Declaration of a Person in Fits of Hystero-Epilepsy Not Admissible.*—The exclamations of a female plaintiff while in a fit of hystero-epilepsy, and while kicking and striking, calling the name of the defendant, telling him to get away from her and other expressions of a similar character, are not admissible as evidence in a suit of trespass for debauching her.

3.   INSTRUCTIONS—*When Both Parties Testify.*—The law regarding the giving of prominence by instructions to the interest of parties litigant in the event of the suit applies equally to both parties where each are sworn and testify, and the decision of the jury hinges on the question of their respective credibility.

Memorandum.—Action for debauching and ill-treating plaintiff.   In the Circuit Court of Boone County; the Hon. CHARLES KELLUM, Judge presiding.   Declaration in trespass; plea of general issue; trial by jury; verdict and judgment for defendant; appeal by plaintiff.   Heard in this court at the May term, 1894, and affirmed.   Opinion filed December 13, 1894.

WM. BIESTER and GARVER & FISHER, attorneys for appellant.

CHARLES E. FULLER and WILLIAM C. DEWOLF, attorneys for appellee.

MR. JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

Appellant, who was then a minor, brought this suit by her next friend against appellee to recover damages alleged

to have resulted from a series of indecent assaults made upon her by appellee while a servant in his family, making her nervous, timid and apprehensive, and causing her to have fits of hystero-epilepsy. There was a trial resulting in a verdict and judgment for appellee.

Plaintiff is a German girl who came to this country when eleven years old, and began working for defendant, who is a farmer in Boone county in this State, in November, 1889, when she was fourteen years old. She worked for him in the house, and sometimes out of doors, from that time until March 2, 1892, with the exception of four weeks in the summer of 1891. In November, 1891, she became nervous and easily startled and alarmed, and from that time she had occasional nervous attacks and fits of hystero-epilepsy, during which she was greatly terrified and writhed upon the bed, striking, kicking and tearing the quilts. She seemed afraid of the defendant, and other persons who came near her. Some of the time she could not sleep alone, and she became very weak and debilitated. Her health remained poor after leaving defendant's house. It was claimed on the trial that her sad condition resulted from assaults upon her by defendant, commencing in May, 1891, and repeated at intervals afterward, which were successfully resisted by her, but which were endured without public complaint because of arguments and threats of defendant to induce silence on her part. There was evidence that assaults such as she related would be an adequate cause for the terrible nervous disorders from which she suffered. Whether such assaults were proved depended upon the testimony of the parties to the suit. She affirmed that he committed them and detailed occurrences, giving his acts and language, of the vilest description. He denied her charges with equal emphasis. There is nothing in the record which enables us to say which one the jury should have credited. It is remarkable that a simple, industrious country girl working on a farm should have become acquainted with such language as she repeated in court, unless through some experience similar to that related by her, and this, with other facts, lend proba-

bility to her story; but on the other hand, when she left defendant's house she permitted a younger sister to take her place when there was no necessity for her doing so, and such fact, with her apparent friendliness to defendant, tended to discredit her. The defendant was sixty-seven years old, and had lived in the same locality near where the case was tried for forty-eight years. The jury believed him, and their finding had the approval of the judge who presided at the trial. They were in a situation to judge of the truth of the respective statements, and we see no reason to differ with them in their conclusion.

Plaintiff offered to prove her declarations while in the fits of histero-epilepsy, and to show that while kicking and striking she repeated the name of defendant, and told him to get away from her, and made other expressions of that kind, but the evidence was not admitted, and this is claimed to have been an error.

The evidence was that she was not rational at such times, and that her outcries might or might not have some connection with the cause of her disorder. They were not proved to indicate such cause and the ruling was right.

Some of the instructions given for defendant are subject to just criticism. The second was as follows:

" While the law makes the plaintiff a competent witness in this case, yet the jury have a right to take into consideration her situation and interest in the result of your verdict, and all the circumstances which surround her, and give to her testimony only such weight as in your judgment it is fairly entitled to."

This instruction gave prominence to the interest of plaintiff in the result of the suit and ignored the same cause affecting the credibility of defendant, and the decision of the jury hinged on the question of their respective credibility. The rules in that regard applied equally to the parties, and in a statement of the law they should be presented to the jury as so applying. The instruction might have been refused with propriety. Other instructions are objectionable, but this is the only one that, in view of all the evidence, we

think, might have proved detrimental to plaintiff, and we are not disposed to reverse the judgment on account of it. We should scarcely expect a different result upon another trial with the burden of proof resting upon plaintiff to prove the assaults by a preponderance of the evidence. Affidavits were made charging misconduct of persons not parties to the suit in attempts to influence the jury, but they were contradicted by counter affidavits and the charges were not sustained.

We do not feel justified in reversing the judgment on account of such errors as are found in the instructions, and it will therefore be affirmed.